132 F.3d 40
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Anton Abdelahad SHIO, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 96-70826, Auj-uko-tpy.
 United States Court of Appeals, Ninth Circuit.
 Submitted Dec. 1, 1997.**
Dec. 10, 1997.
 
 On Petition for Review of an Order of the Board of Immigration Appeals
 Before BEEZER, THOMPSON, and O'SCANNLAIN, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Petitioner Anton Abdelahad Shio filed an application for asylum or, in the alternative, withholding of deportation with the Immigration and Naturalization Service ("INS") in June 1991. The application was denied, and Shio was placed in deportation proceedings. The Immigration Judge ("IJ") denied Shio's claims, and the Board of Immigration Appeals ("BIA") dismissed Shio's appeal. Shio petitions this court for review. We have jurisdiction pursuant, to 8 U.S.C. § 1105a(a) and deny the petition.[1]
 
 
 3
 In dismissing Shio's appeal, the BIA adopted the decision of the IJ.[2] Where the BIA adopts the IJ's decision, we review the IJ's decision instead of the BIA's decision. Alaelua v. INS, 45 F.3d 1379, 1382 (9th Cir.1995) (BIA can adopt IJ's decision where BIA gives "individualized consideration" to the case but "[chooses] to use the IJ's words rather than its own"). We review "the IJ's determination that petitioner has failed to demonstrate past persecution or a 'well-founded' fear of future persecution under the substantial evidence standard." Vallecillo-Castillo v. INS, 121 F.3d 1237, 1239 (9th Cir.1997) (citations omitted). To obtain reversal, Shio "must demonstrate that any reasonable factfinder would have to conclude that [Shio] has a well-founded fear of persecution." Id. (citations omitted).
 
 
 4
 Shio contends he presented substantial evidence in support of his request for asylum and withholding of deportation. Shio is a Palestinian Christian who was born in Bethlehem and is a citizen of Jordan. His home was in Bethlehem, which was once controlled by Jordan and now is controlled by Israel. Shio claims that, while living in Bethlehem, he was persecuted on account of his religious beliefs by the Israeli military and that he will continue to be persecuted if forced to return to Israel.
 
 
 5
 During the deportation hearing, Shio was asked what persecution he had suffered; he indicated that the Israeli military asked the Palestinian Christians to clean the streets and walls on which Palestinians wrote graffiti. If the Palestinian Christians refused, Shio said, they were beaten. Shio also complained that, on one occasion, when he on the way to church, he was forced to clean the street. Shio also claimed his brother was jailed by the Israeli authorities for eighteen months and beaten; Shio said that after his brother's release, his brother's "mental capacity [was] not as good as it used to be." When asked why his brother was arrested, Shio claimed that a Palestinian, whom Shio said was an Israeli informant, "complained about" Shio's brother because his brother was "looking at him in a, not in a nice way and things in that nature."
 
 
 6
 At the hearing, Shio admitted that his family continues to live in Bethlehem. He also admitted that there were open Christian churches in Bethlehem. When the IJ asked Shio, "what's the problem?", Shio responded, "There is no work." Shio also admitted that, for the last 20 years, the mayor of Bethlehem has been a Palestinian Christian.
 
 
 7
 In its decision, the IJ explained why it determined Shio failed to carry his burden concerning allegations of persecution in Bethlehem, Israel. Among other things, (i) Shio's family continued to reside in Bethlehem; (ii) Shio admitted that there were open and operating Christian churches in Bethlehem; (iii) the long-time mayor of Bethlehem was a Palestinan Christian; (iv) Shio failed to provide any evidence corroborating his assertions, including the assertion that his brother was arrested and abused by Israeli authorities; (iv) Shio was "quite vague" about the reasons why his brother was arrested, thereby preventing the IJ from concluding that, even if Shio's brother was arrested, he was arrested on account of race, religion, nationality, membership in a particular social group or political opinion; (v) there was no evidence linking what purportedly happened to Shio's brother with any possible persecution of Shio, and (vi) Shio's testimony that there was "no work" in Bethlehem or the West Bank formed part of his desire not to return to Bethlehem and was entirely consistent with his asylum applications. The IJ also pointed to multiple contradictions between Shio's asylum applications and his testimony. The IJ's reasoning is supported by substantial evidence in the record; Shio's evidence is not sufficient to compel a reasonable factfinder to conclude that Shio has a wellfounded fear of persecution.
 
 
 8
 Shio also contends that one of the main reasons the IJ denied his application for asylum and withholding of deportation was because Shio failed to present any evidence other than his testimony in support of his claims. Shio argues that, because the IJ never stated that Shio was not credible, Shio's testimony about the persecution he purportedly suffered, and might suffer in the future, must be accepted as true. However, as stated supra, the IJ relied upon a variety of reasons in denying Shio's application. Moreover, the IJ did, in fact, refer to Shio's lack of credibility; the IJ pointed to numerous contradictions between Shio's testimony and earlier written statements and indicated the "inconsistencies between [Shio's] written representations and his testimonial assertions significantly undercut the credibility and the sufficiency of his claims of a well-founded fear of persecution." At a minimum, this is an implied finding that Shio's testimony is not credible, to which we defer because the record supports such a finding. See Saballo-Cortez v. INS, 761 F.2d 1259, 1266 (9th Cir.1984).
 
 
 9
 In his second application for asylum and withholding of deportation, Shio claimed he would be persecuted as a Christian in Jordan. However, as the IJ noted, Shio did not press this argument in his testimony at his deportation hearing. During the deportation hearing, Shio testified that he was a Jordanian citizen and had a Jordanian passport. He also said he lived in Jordan between 1977 and 1979. He agreed with the IJ that more than half the population of Jordan is Palestinian. When asked by the IJ why he could not return to Jordan, where the majority of people have his ethnic background, Shio responded, without any explanation, that even though he was a Jordanian citizen, he, as a Palestinian, did not have permission to live in Jordan. In short, although Shio claimed in his second asylum application that he would face persecution in Jordan, he failed to suggest during the deportation hearing that he would be persecuted in Jordan on any basis, including on account of his religion. Shio can point to virtually no evidence in support of this claim. Moreover, because Shio failed to raise this claim in his opening brief, the claim is deemed waived. E.g., Dilley v. Gunn, 64 F.3d 1365, 1367 (9th Cir.1995) (issues not raised in an opening brief are usually deemed waived).
 
 
 10
 Because Shio failed to satisfy the lower standard required to establish eligibility for asylum, his claim for withholding of deportation necessarily fails. Fisher v. INS, 79 F.3d 955, 961 (9th Cir.1996).
 
 
 11
 PETITION DENIED.
 
 
 
 **
 The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App. P. 34(a); Ninth Circuit Rule 34-4
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or used by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Because we deny the petition for review, we do not consider the applicability of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996
 
 
 [2]
 The BIA stated in its decision:
 The Immigration Judge's decision accurately sets forth the facts asserted by the respondent in support of his asylum claim and correctly concludes that the respondent has failed to establish a well-founded fear of persecution.... Inasmuch as we are in agreement with the decision of the Immigration Judge, we adopt the decision of the Immigration Judge and his decision is affirmed based upon and for the reasons set forth in his decision dated August 31, 1995.
 (BIA Decision at 1.)